**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sharon Sorensen, an individual, | No. CV-05-4151-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Southwest Behavioral Health Services, Inc., an Arizona corporation, et al., | |
| Defendants. | |

Defendant Southwest Behavioral Health Services, Inc. ("SBHS") has filed a motion for summary judgment. Dkt. #31. Plaintiff has filed a response to the motion and Defendant has filed a reply. Dkt. ##36, 41. As explained below, the Court will grant the motion.[1]

**I.    Background.**

Defendant SBHS is a non-profit corporation that provides support services to children, incarcerated persons, and adults with serious mental and behavioral health illnesses. Plaintiff was employed by Defendant as a behavioral health professional beginning in April 2003. Plaintiff worked at Defendant's La Hacienda residential treatment facility. Plaintiff's job duties included taking notes regarding patients, transporting patients to and from

---

[1] The request for oral argument is denied because the parties have thoroughly discussed the law and evidence and oral argument will not aid the Court's decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1 appointments, counseling patients, and ensuring that patients took their medications.
2 Plaintiff's direct supervisor was Donna Tice. Plaintiff was terminated on February 20, 2004.
3       In March 2004, Plaintiff filed a charge of discrimination and retaliation with the Equal
4 Employment Opportunity Commission ("EEOC"). The EEOC issued a determination letter
5 on April 22, 2005. The EEOC found reasonable cause to believe that Defendant had violated
6 Title VII of the Civil Rights Act of 1964 ("Title VII") by engaging in religious harassment
7 against Plaintiff and by retaliating against Plaintiff for complaining about the alleged
8 harassment.
9       Plaintiff commenced this action by filing a complaint against SBHS, Tice, and several
10 fictitious defendants on December 19, 2005. Dkt. #1. Plaintiff alleges that a co-worker made
11 derogatory comments regarding Plaintiff's Jewish faith and that Tice made jokes and crass
12 comments about Plaintiff's sexual orientation. *Id.* ¶¶ 8-10, 14-16. Plaintiff further alleges
13 that SBHS allowed the harassment to continue and terminated Plaintiff in retaliation for
14 complaining about the harassment. *Id.* ¶¶ 19-26. The complaint asserts five claims for relief.
15 Counts one and two assert violations of Title VII and the Arizona Civil Rights Act
16 ("ACRA"), respectively. *Id.* ¶¶ 28-54. Counts three and four assert violations of the Arizona
17 Employment Protection Act ("AEPA"). *Id.* ¶¶ 55-65. Count five is a state-law tort claim for
18 intentional infliction of emotional distress. *Id.* ¶¶ 66-70. The claims against Defendant
19 Donna Tice have been dismissed. Dkt. ##13-14.

20 **II.    Summary Judgment Standard.**

21       Summary judgment is appropriate if the evidence, viewed in the light most favorable
22 to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and
23 that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*
24 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might
25 affect the outcome of the suit . . . will properly preclude the entry of summary judgment."
26 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be
27 "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.
28 / / /

**III.    Counts One and Two:  Violations of Title VII and the ACRA.**

Counts one and two allege that Defendant discriminated against Plaintiff on the basis of her religion and sex and retaliated against her for complaining about the discrimination, in violation of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3, and the ACRA A.R. S. § 41-1401 *et seq.* Dkt. #1 ¶¶ 37-38, 53.  Because the ACRA was modeled after Title VII, federal cases interpreting and applying Title VII are instructive with regard to the ACRA.  *See Francini v. Phoenix Newspapers, Inc.*, 937 P.2d 1382, 1388 (Ariz. Ct. App. 1996).  For the sake of simplicity, the Court will address Plaintiff's discrimination and retaliation claims in terms of Title VII only.

    **A.    Plaintiff's Religious Discrimination Claims.**

Plaintiff alleges that she is Jewish and that co-worker Michael Kennedy made certain anti-Semitic comments to Plaintiff.  Dkt. #1 ¶¶ 8-9.  Defendant argues that Plaintiff has not made a prima facie case of religious discrimination because she has not shown that she is a member of the protected class of Jewish persons.  Dkt. #31 at 10.  Defendant asserts that Plaintiff was raised as a Seventh Day Adventist and that she has never formally converted to the Jewish faith.  *Id.*

Defendant cites no legal authority for the proposition that a person must formally convert to a particular religion to be a member of a protected class for purposes of Title VII.  The Ninth Circuit has explained that "'the requisite degree of proof necessary to establish a prima facie case for Title VII on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061-62 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).  Indeed, "[t]he amount of evidence that must be produced in order to create a prima facie case is 'very little.'" *Wallis*, 26 F.3d at 889 (citation and alterations omitted).

Plaintiff has testified that both she and her domestic partner are Jewish.  Dkt. #32 ¶ 8.  Defendant does not dispute that Plaintiff held herself out and was perceived as being Jewish during her employment with Defendant.  The Court concludes that Plaintiff has made a prima facie showing that she is a member of a protected class.

1  Defendant further argues that it is not liable for the alleged harassment of Plaintiff
2 because it took reasonable measures to prevent and correct the harassment. Dkt. #31 at 10.
3 "'Once an employer knows or should know of coworker harassment, a remedial obligation
4 kicks in. Such an employer will be liable for the hostile work environment created by the
5 coworker unless 'the employer takes adequate remedial measures in order to avoid liability.
6 The employer's actions should be 'reasonably calculated to end the harassment.'" *Star v.*
7 *West*, 237 F.3d 1036, 1038 (9th Cir. 2001) (citations and alterations omitted).

8  Construed in Plaintiff's favor, the evidence shows the following: Defendant had an
9 anti-harassment policy of which Plaintiff was aware. The policy provided that Defendant
10 was committed to providing employees with a work environment free of all forms of
11 harassment and that actions or words that harass employees were strictly forbidden. The
12 policy further provided that an employee who believed that he or she had been subjected to
13 harassment was to bring this to the attention of management immediately. The policy
14 assured employees that all complaints would be investigated promptly and thoroughly and
15 that no retaliation would be taken against the employee for complaining about harassment.
16 Dkt. #32 ¶ 6.

17  Plaintiff complained to Tice about Kennedy's harassment on December 15, 2003.
18 The next day, Tice spoke to Kennedy about Plaintiff's complaint. Kennedy denied harassing
19 Plaintiff and stated that he would never make any negative comments about a person's
20 religion. Tice told Kennedy that he had to be careful about making any comments that could
21 be perceived in a negative manner and that he would be terminated if Tice learned that he had
22 made any other comments like those alleged by Plaintiff. Tice informed Plaintiff that she had
23 spoken to Kennedy about his comments and told Plaintiff not to worry about Kennedy
24 because he was a "good old boy." *Id.* ¶¶ 16-19.

25  On February 7, 2004, Plaintiff met with Tice and her supervisor, John Irvine. *Id.* ¶ 57.
26 Plaintiff informed Irvine of her complaint of harassment. Plaintiff's concern was that Tice
27 had not taken the complaint seriously given Tice's comment that Kennedy was a "good old
28 boy." Tice stated that she had spoken to Kennedy and that the harassment had stopped.

- 4 -

1 Plaintiff agreed that Kennedy had stopped making harassing comments. *Id.* ¶ 67, Ex. 2 at 49,
2 108-09.  Irvine prepared a memorandum summarizing the meeting. *Id.* ¶ 75.

3       On February 12, 2004, Plaintiff filed a grievance with Defendant's human resources
4 department regarding Tice's comment that Kennedy was a "good old boy."  Defendant's
5 Vice President of Human Resources, Rita Martinez, discussed the grievance with
6 Defendant's Executive Director, Jeff Gray.  *Id.* ¶ 81.  Because Plaintiff's complaint was
7 against her immediate supervisor, Plaintiff was placed on paid administrative leave pending
8 investigation of the grievance.[2]  Gray spoke to Irvine and Tice regarding the allegations in
9 the grievance and reviewed Irvine's documentation of the February 7, 2004 meeting.  Gray
10 concluded that Tice should not have made the "good old boy" comment, but that Tice had
11 taken appropriate action to address Plaintiff's single complaint of harassment. *Id.* ¶¶ 92-94.
12 Gray and Martinez reprimanded Tice orally and in writing for her "good old boy" comment.
13 Tice was informed that the comment seemed to minimize or justify Kennedy's harassment
14 and that Defendant "[had] no 'good old boys' on the job, only persons who respect their co-
15 workers' right to practice whatever religious or personal lifestyles they may choose."  Tice
16 was advised that employees needed to know that Defendant was "intolerant of discriminatory
17 statements or behavior of any kind." *Id.* ¶ 96.

18       On February 20, 2004, Plaintiff met with Gray and Martinez to discuss the resolution
19 of her grievance and her return to work.  Because Kennedy had ceased making harassing
20 comments, Gray asked Plaintiff to let the matter go so that Plaintiff and Defendant could
21 move forward.  Plaintiff refused, demanding that Tice and Kennedy be punished and that
22 Defendant make a public apology to the Jewish community.  Gray and Martinez declined to
23 issue a public apology and believed that further discipline against Tice and Kennedy was not
24 warranted.  Plaintiff was not satisfied with the resolution and became angry.  Plaintiff

25

26

27       [2]Plaintiff disputes that her administrative leave was with pay.  Dkt. #36-2 ¶ 92.
Plaintiff, however, has presented no evidence showing that her leave was without pay. *See*
28 *id.*  Moreover, Plaintiff avers in her complaint that "[a]s a result of filing the grievance [she] was placed on *paid* administrative leave[.]"  Dkt. #1 ¶ 21 (emphasis added).

- 5 -

repeatedly told Gray and Martinez that if she was sent back to work with Tice and things "blew up," they would be held responsible for "whatever happens." *Id.* ¶¶ 98-106.

Given Plaintiff's angry demeanor and talk about things "blowing up," Gray and Martinez did not believe it was safe for Plaintiff to return to work. They believed that Plaintiff was threatening to take action that would be harmful to Tice or disruptive to the residents of La Hacienda. Gray determined that he had no other choice but to terminate Plaintiff's employment. *Id.* ¶¶ 105-107.

These undisputed facts show that Defendant's actions were reasonably calculated to prevent and correct the alleged harassment. Defendant had an anti-harassment policy in place at the time of the alleged harassment. Defendant trained Plaintiff on the policy when she was hired. Defendant provided Plaintiff with a copy of Defendant's grievance procedures, which Plaintiff followed in making her complaints. The Ninth Circuit has made clear that employers can show that they exercised reasonable care to prevent harassment by adopting and promoting awareness of an anti-harassment policy. *See Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1186 (9th Cir. 2005); *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1180 (9th Cir. 2001).

This Circuit has also made clear that "counseling or admonishing the offender can constitute an adequate 'disciplinary' response." *Star*, 237 F.3d at 1039. In this case, Tice admonished Kennedy for allegedly making anti-Semitic comments and warned him that any such comments in the future would result in his termination. While Tice's comment that Kennedy was a "good old boy" was certainly ill-considered and insensitive, "it cannot singularly serve to transform [Defendant's] response into an unreasonable one." *Hardage*, 427 F.3d at 1186. This is particularly true given the fact that Defendant reprimanded Tice for making the comment.

Plaintiff has testified that Kennedy's harassment continued after Tice counseled him in December 2003. Dkt. #32, Ex. 2 at 42. This Circuit follows the rule that an employer may be liable in a coworker harassment case "only for what management-level employees 'knew or should have known.'" *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir.

1999) (citation omitted). The undisputed evidence shows that Plaintiff did not bring Kennedy's alleged continued harassment to the attention of Tice or any other management-level employee. Rather, Plaintiff told Tice and Irvine that Kennedy's harassment had stopped.

In summary, the undisputed facts show, as a matter of law, that Defendant exercised reasonable care to correct and prevent the alleged harassment. Defendant had an anti-harassment policy which it promoted. Defendant promptly and thoroughly investigated Plaintiff's complaints. Defendant took remedial measures that, to its knowledge, ended the alleged harassment. The fact that Defendant declined to issue a public apology or further discipline Kennedy and Tice does not render Defendant's response unreasonable. The Court will grant summary judgment in Defendant's favor on Plaintiff's religious discrimination claims. *See Hardage*, 427 F.3d at 1188; *Kohler*, 244 F.3d at 1182.

**B.     Plaintiff's Sex Discrimination Claims.**

Plaintiff alleges that in referring to female homosexuals Tice stated, "I don't go that way" and "I don't swing that way." Dkt. #1 ¶ 16. Plaintiff contends that these comments created a hostile work environment in violation of Title VII. *Id.* ¶¶ 16-17. Defendant argues that this claim fails because Plaintiff has presented no evidence that she was harassed "because of sex." Dkt. #31 at 11. Plaintiff does not address this argument in her response. *See* Dkt. #36.

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discrimination* because of sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasis in original; alterations omitted); *see* 42 U.S.C. § 2000e-2(a)(1); *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1067 (9th Cir. 2002) (en banc); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874 (9th Cir. 2001). In same-sex harassment cases, a plaintiff may show that harassment was because of sex by presenting evidence (1) that the harasser was motivated by sexual desire, *see Oncale*, 523 U.S. at 80, (2) that the harasser was motivated by a general hostility toward women, *see id.*, (3) that the harassment was based on gender stereotyping, *see Nichols*, 256 F.3d at 875, or (4) that the

1  harassment involved physical conduct of a sexual nature, *see Rene*, 305 F.3d at 1064.

2  No such evidence exists in this case. Plaintiff has presented no evidence that Tice was
3  homosexual or had made sexual advances toward Plaintiff. Indeed, the alleged harassing
4  comments indicated that Tice was not homosexual. Nor has Plaintiff presented evidence that
5  Tice disliked women in general or engaged in gender stereotyping. The alleged harassment
6  did not include physical conduct of a sexual nature. In short, Plaintiff has provided no
7  evidence from which a jury reasonably could conclude that Tice harassed Plaintiff because
8  Plaintiff is female.

9  The Supreme Court has made clear that workplace harassment is not "discrimination
10 because of sex merely because the words used have sexual content or connotations." *Oncale*,
11 523 U.S. at 80. Rather, the plaintiff must prove that the harassment at issue "actually
12 constituted '*discrimination* because of sex.'" *Id.* at 81 (emphasis in original). In other words,
13 Plaintiff must show that she was treated differently from other persons, or was subjected to
14 harassment, because of her gender. Plaintiff has failed to create a genuine issue of material
15 fact as to whether she was discriminated against because of her sex. The Court will grant
16 summary judgment in Defendant's favor on Plaintiff's sex discrimination claims.

17 **C.   Plaintiff's Retaliation Claims.**

18 Title VII "prohibits retaliation against an employee 'because [she] has opposed any
19 practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty.*
20 *College*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff
21 makes a prima facie case of unlawful retaliation by producing evidence that she engaged in
22 activity protected by Title VII, that the employer subjected her to a materially adverse action,
23 and that there was a causal link between the protected activity and the adverse action. *See*
24 *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2409 (2006); *Ray v. Henderson*,
25 217 F.3d 1234, 1240 (9th Cir. 2000). If the plaintiff makes a prima facie case, the burden
26 of production shifts to the defendant to present a legitimate, non-retaliatory reason for the
27 adverse action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). If the
28 defendant carries this burden, the plaintiff "must demonstrate a genuine issue of material fact

1   as to whether the reason advanced by the [defendant] was a pretext." *Id.*

2   Defendant contends that Plaintiff has not made a prima facie case of retaliation
3   because she cannot show a nexus between her protected activity and her termination. Dkt.
4   #31 at 12. Temporal proximity between an employer's knowledge of protected activity and
5   an adverse action is sufficient evidence of causality to establish a prima facie case where the
6   temporal proximity is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273
7   (2001); *see Ray*, 217 F.3d at 1244 (finding that the plaintiff had made a prima facie showing
8   of causation where the adverse actions were "implemented close on the heels of his
9   complaints").

10   In this case, Plaintiff first complained about the alleged harassment in December
11   2003. Plaintiff was terminated in February 2004. The temporal proximity between the
12   complaints of harassment and the termination is sufficient prima facie evidence of causation.
13   *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (sufficient evidence existed
14   where the adverse actions occurred less than three months after the complaint); *Miller v.*
15   *Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989) (two months sufficient).

16   Defendant further contends that Plaintiff has no evidence that Defendant's legitimate
17   non-retaliatory reason for Plaintiff's termination – fear of Plaintiff's possible actions – was
18   a pretext for retaliation. Dkt. #31 at 12. To survive summary judgment, Plaintiff must show
19   that this stated reason is pretextual either directly by persuading the Court that a retaliatory
20   reason more likely motivated Defendant, or indirectly by showing that Defendant's proffered
21   explanation is unworthy of credence. *See Villiarimo*, 281 F.3d at 1062.

22   The only evidence Plaintiff has presented in opposition to Defendant's motion is her
23   EEOC intake questionnaire and the EEOC determination letter. Dkt. #40, Exs. 1-2. Plaintiff
24   argues that the determination letter alone is sufficient to survive summary judgment. Dkt.
25   #36 at 19.

26   "This argument is without merit. [Plaintiff] fails to point to a single case holding that
27   a determination letter from the EEOC is sufficient to create a genuine issue of material fact."
28   *Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005). While some EEOC

1  determination letters may be highly probative, they are not "a free pass through summary
2  judgment." *Id.*  The determination letter in this case merely recites the facts Plaintiff
3  disclosed; it says nothing about Defendant's proffered reason for Plaintiff's termination. *See*
4  Dkt. #40 Ex. 2.  Moreover, the undisputed evidence shows that no representative of the
5  EEOC interviewed Gray or Martinez prior to issuance of the determination letter.  Dkt. #32
6  ¶¶ 130, 132.  The Court concludes that "the EEOC's letter does not offer any support for
7  [Plaintiff's] attempt to show pretext in this case." *Mondero*, 400 F.3d at 1215; *see Green v.*
8  *Maricopa County Cmty. College Sch. Dist.*, 265 F. Supp. 2d 1110, 1129 (D. Ariz. 2003)
9  (concluding that an EEOC letter did not establish any evidence of pretext where the
10 investigator did not interview the sole decision-maker or evaluate the proffered reason for
11 the adverse employment decision).

12 The Court will grant summary judgment in Defendant's favor on Plaintiff's retaliation
13 claims.  *See id.*; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1284 (9th Cir. 2000) ("[W]e
14 have upheld summary judgment in cases in which the EEOC itself has brought suit.  If the
15 EEOC's suing is insufficient to create a genuine issue of material fact, then, a priori, a
16 conclusory EEOC reasonable cause letter, at least by itself, does not create an issue of
17 material fact.") (citations omitted).

18 **IV.    Counts Three and Four:  Violations of the AEPA.**

19 Plaintiff alleges in count three that Defendant violated section 23-1501 the AEPA by
20 terminating her in retaliation for complaining about discrimination.  Dkt. #1 ¶¶ 56-57 (citing
21 A.R.S. § 1501(3)(b)(i)).  Plaintiff alleges in count four that Defendant violated section
22 23-1502 of the AEPA because Defendant's discriminatory conduct resulted in Plaintiff's
23 constructive discharge.  *Id.* ¶¶ 62-63 (citing A.R.S. § 23-1502(A)).

24 Defendant argues that count three fails as a matter of law because the AEPA does not
25 allow a separate tort claim for wrongful discharge based on a violation of the ACRA.
26 Dkt. #31 at 13 (citing A.R.S. § 23-1501(3)(b)(i); *Cronin v. Sheldon*, 991 P.2d 231 (Ariz.
27 1999)).  Defendant argues that count four fails because it is undisputed that Plaintiff was
28 involuntarily terminated, not constructively discharged.  *Id.* at 14 (citing Dkt. #32 ¶ 109).

1  Plaintiff does not address these arguments in her response. Plaintiff instead contends,
2  without citing any legal authority, that counts three and four should remain as alternative
3  claims in case the jury does not find for Plaintiff on one or more of the other counts. Dkt.
4  #36 at 20.

5  Defendant's arguments are well taken. The Court accordingly will grant summary
6  judgment in Defendant's favor on counts three and four.

### V.     Count Five: Plaintiff's Intentional Infliction of Emotional Distress Claim.

To recover for intentional infliction of emotional distress ("IIED") in Arizona, a plaintiff must prove that (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that distress would result from the conduct, and (3) the conduct caused the plaintiff severe emotional distress. *See Lucchesi v. Stimmell*, 716 P.2d 1013, 1015-16 (Ariz. 1986).

Under the first element, a plaintiff "may recover for [IIED] only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152, 155 (Ariz. 1978) (citation omitted). It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atlantic Sys. Leasing*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citations omitted).

As explained above, Defendant took reasonable measures to prevent and correct the alleged harassment in this case. Defendant's conduct was neither extreme nor outrageous. *Cf. Ford v. Revlon, Inc.*, 734 P.2d 580, 584 (Ariz. 1987) (finding the employer liable for IIED where it completely ignored the plaintiff's complaints of harassment for more than a year and did not effectively discipline the harasser until after the plaintiff had attempted suicide). The Court will grant summary judgment in Defendant's favor on count five.

**IT IS ORDERED:**

1. Defendant Southwest Behavioral Health Services, Inc.'s motion for summary

Case 2:05-cv-04151-DGC   Document 42   Filed 06/18/07   Page 12 of 12

1       judgment (Dkt. #31) is **granted**.

2    2. The claims against the fictitious defendants are **dismissed**.

3    3. The Clerk shall **terminate** this action.

4    DATED this 18th day of June, 2007.

*David G. Campbell*
United States District Judge